| Case No. | SACV 18-06122 AG | Date | February 4, 2019 |
|---|---|---|---|
| Title | IN RE GLENROY E. DAY JR. | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Lisa Bredahl | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |

**Proceedings:** **[IN CHAMERS] ORDER REGARDING BANKRUPTCY COURT ORDER DETERMINING VALUE OF COLLATERAL**

Appellant Glenroy E. Day appeals the Bankruptcy Court's June 14, 2018 order determining the value of certain collateral. The order is AFFIRMED based largely on *res judicata*.

## 1. BACKGROUND

In August 2008, La Jolla Bank, FSB loaned $3,066,625 to the Debtor. The loan was evidenced by a promissory note (the "Note") and secured by (1) a deed of trust encumbering real property at 32001 Pacific Coast Highway, Malibu, CA 90265 (the "PCH Property") and (2) a deed of trust encumbering real property at 6463 Zuma Place, #165, Malibu, California 90265 (the "Zuma Property"). *See* Excerpt of Record ("ER"), 341-351. The deeds of trust were transferred to OneWest Bank, FSB, which later merged into CIT Bank, N.A., one of the appellees in this action.

On June 6, 2011, the Debtor filed a voluntary chapter 11 petition, commencing case no. 1:11-bk-17021-VK (the "First Chapter 11 Case"). On July 26, 2011, OneWest filed a secured claim for $3,306,702.55 and was granted relief from the automatic stay as to the PCH Property. *See* Order Regarding Debtor's Motion for Order Determining Value of Collateral ("Valuation Order") at 9-10, 1:13-bk-17502-VK (June 14, 2018). The PCH Property was then sold at a trustee's sale in April 2013. The Debtor claims that after the sale, he believed nothing was owed to OneWest on the Note, and that he was unaware that the debt associated with the Note was still cross-collateralized against the Zuma Property. (Appellant's Brief, Dkt. 12 at

15.) He therefore didn't inform his counsel that the Zuma Property contained a junior lien in third position held by OneWest (the "Lien"). (*Id.*)

On December 2, 2013, the Debtor commenced a second voluntary Chapter 11 bankruptcy proceeding (the "Second Chapter 11 Case"). He scheduled OneWest as holding a disputed claim of $0. At that point, he owed about $823,338 on the Note related to the first deed of trust on the Zuma Property (held by Union Bank, N.A.) and $242,758 on the note related to the second deed of trust on the Zuma Property (held by PNC Bank). He stated the value of the Zuma Property to be $850,000. (Valuation Order, 10.)

On July 24, 2014, the Debtor filed an amended Disclosure Statement and Plan of Reorganization (the "Plan"). The Disclosure Statement listed OneWest's claim as a general unsecured claim with a $0 payment. The Plan stated nothing OneWest's Lien on the Zuma Property or any potential avoidance. OneWest didn't appear in the case or file a proof of claim. On December 5, 2014, the Court entered an order confirming the Plan. (Valuation Order, 10.)

When the Debtor sought to refinance and sell the Zuma Property in June 2017, the title company inquired about the Zuma Deed of Trust that still appeared on the Zuma Property. The Debtor contacted CIT and requested that the Lien be released. CIT responded that the title contained no mention of the Lien and sent a letter stating it was in the process of completing the release of the Lien. But when the Zuma Property was in escrow, CIT informed the Debtor it wouldn't release the Lien without payment of the net proceeds of the sale to CIT. To preserve the sale effort, CIT and the Debtor agreed to set aside the $173,003.65 proceeds pending resolution of the Lien avoidance dispute. (Valuation Order, 11-12.)

The Debtor's Second Chapter 11 Case was reopened, and the Debtor filed a motion to value the Zuma Property at $850,000. Although through that motion, the Debtor sought to modify the Plan to avoid CIT's Lien. Bankruptcy Judge Victoria Kaufman granted the Debtor's request to value the Zuma Property at $850,000 but rejected the proposed Lien avoidance primarily on *res judicata* grounds. The Bankruptcy Court also rejected the Debtor's excusable neglect and equitable estoppel arguments. The Debtor now appeals the Bankruptcy Court's findings regarding avoidance of the Lien.

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-06122 AG | Date | February 4, 2019 |
|---|---|---|---|
| Title | IN RE GLENROY E. DAY JR. | | |

## 2. STANDARD

"The bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code are reviewed de novo and its factual findings for clear error." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).

## 3. ANALYSIS

### 3.1 Res Judicata

The Bankruptcy Court found that the Debtor's attempt to avoid the Lien in his 2018 valuation motion was barred by the doctrine of *res judicata*. The District Court reviews rulings regarding *res judicata* de novo as mixed questions of law and fact in which legal questions predominate. *Alary Corp. v. Sims (In re Assoc. Vintage Group, Inc.)*, 283 B.R. 549, 554 (9th Cir. BAP 2002).

The Ninth Circuit has often applied the concept of res judicata (or "claim preclusion") to block post-confirmation litigation. *See, e.g., In re Associated Vintage Grp., Inc.*, 283 B.R. 549, 554 (B.A.P. 9th Cir. 2002); *Knupfer v. Wolfberg (In re Wolfberg),* 255 B.R. 879, 881 (9th Cir. BAP 2000) ("*Wolfberg*"); *Kelley v. S. Bay Bank (In re Kelley),* 199 B.R. 698, 701–04 (9th Cir. BAP 1996) ("*Kelley*"); *Heritage Hotel Ltd. P'ship I v. Valley Bank (In re Heritage Hotel Ltd. P'Ship I),* 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd mem.,* 59 F.3d 175 (9th Cir.1995) ("*Heritage Hotel*"). In claim preclusion analysis, the "claim" consists of "all rights to remedies that arise out of the same 'transaction,' determined 'pragmatically' based on the interrelation of the facts, whether they form a convenient trial unit, and whether treatment as a unit conforms to the parties' expectations or business understandings or usages." *In re Associated Vintage Grp.*, 283 B.R. at 556-557.

The Ninth Circuit has applied these factors to establish *res judicata*: (1) the parties were identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action was involved in both cases. *Heritage Hotel,* 160 B.R. at 377. There is no dispute in this case that the parties involved in the Plan are the same parties involved in this matter; that the Bankruptcy

Court is a court of competent jurisdiction; or that confirmation of the Plan was a final judgment. The application of *res judicata* thus rests on whether the same cause of action was involved in both cases.

"Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995). Here, the Plan was confirmed in December 2014. And the Debtor stated in his motion for entry of final decree that he had substantially made all Plan payments, so his confirmed Plan isn't alterable under 11 U.S.C. § 1129. Any "matters pertaining to the debtor-creditor relationship" that the Debtor could have raised during the Plan proceedings are thus subject to claim preclusion.

The Bankruptcy Court did not err in finding that the confirmed Plan was *res judicata* as to avoidance of the Lien. The Debtor could have raised the issue of avoidance in the Plan. Instead, he described OneWest's claim as a general unsecured claim with $0 value, causing OneWest to justifiably rely on its Lien for payment and assume it would pass through the bankruptcy. *See, e.g., Acceptance Loan Co. v. S White Transp., Inc. (In re S. White Transp., Inc.)*, 725 F.3d 494, 496 (5th Cir. 2013) ("It is a longstanding rue in bankruptcy that [a] creditor 'with a loan secured by the assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt.") The Debtor gave no notice to OneWest that it would seek to avoid the Lien, though that option was fully available to the Debtor at the time of the Plan proceedings.

As the Debtor states in his opening brief, "avoidance of the lien was not adjudicated as part of the plan confirmation." (Dkt. 12 at 13.) But that is not to say it couldn't have been. Indeed, lien avoidance was part of the "transactional nucleus" of the Plan proceedings and should have been raised then, if at all. *In re Associated Vintage Group*, 283 B.R. at 562; *see also* Restatement (Second) of Judgments, § 24. Lien avoidance falls within the realm of the debtor-creditor relationship that was litigated during the Plan proceedings. *See, e.g., Kelley,* 199 B.R. 698, 702 (B.A.P. 9th Cir. 1996). And the *Shook* case cited by the Debtor is distinguishable. In *Shook*, the Ninth Circuit held that there is no prohibition on postconfirmation claim objections. *In re Shook*, 276 BR 815, 820 (9th Cir. B.A.P. 2002). But claim objections present a different situation than potential avoidance. This is because absent notice of potential avoidance, a creditor need not participate in the bankruptcy proceeding at all, but may expect

the lien to pass through the bankruptcy unaffected. *See, e.g., Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). The *Shook* court even reiterated this point that "unchallenged liens" pass through bankruptcy. *In re Shook*, 276 B.R. at 824. *See also In re Hale*, 359 B.R. 310, 316 (Bankr. E.D. Wash. 2007) ("[A] plan can effectively determine value and/or avoid a lien only if the creditor receives clear notice that the plan will do so.") Because the Debtor provided no notice to OneWest regarding potential avoidance during the Plan proceedings, he is precluded from seeking avoidance of the Lien four years later. The Bankruptcy Court correctly found that *res judicata* prevented the Debtor from avoiding CIT's Lien.

### 3.2 Excusable Neglect

The Court reviews for abuse of discretion a bankruptcy court's decision to grant or deny a motion for an extension of time on grounds of excusable neglect under FRBP9006(b). *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004). Under this standard, the Court "cannot reverse unless we have a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Pipco Fruit Co.*, 122 F.3d 1073 (9th Cir. 1997). Here, the Bankruptcy Court did not abuse its discretion in finding that the Debtor's delay in bringing the Motion to Value was not the result of excusable neglect.

As an initial matter, the Court finds no authority for the Debtor's proposition that excusable neglect weakens the force of *res judicata* where there is a confirmed Chapter 11 plan. Second, the Debtor's Motion to Value failed to address the four factors from *Pioneer Investment Services* that underpin excusable neglect analysis: (1) danger of prejudice to the opposing party; (2) length of delay and potential impact on the proceedings; (3) reason for delay; and (4) the movant's good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Bankruptcy Court was not obligated to manufacture arguments on his behalf. *See, e.g., Dennis v. BEH-1, Ltd. Liab. Co.*, 520 F.3d 1066, 1069 n.1 (9th Cir. 2008).

In any case, the Court finds that the Debtor's neglect was not excusable in this case. CIT would be prejudiced by post-confirmation avoidance of the Lien, because had it been notified of potential avoidance, it would have filed an unsecured claim instead of allowing the Lien to pass through the bankruptcy unaffected. (Opp., Dkt. 16 at 16; ER, Ex. 13.) The Debtor argues that OneWest/CIT "always had a right to file a proof of claim," but without notice of

the possibility of avoidance, there was no reason for OneWest to do so. (Dkt. 12 at 26.) As the Bankruptcy Court thoughtfully noted:

> If the Plan **had** provided for avoidance of the Lien, the Debtor had timely obtained such avoidance, and the Plan was confirmed as-is, then OneWest's resulting deficiency claim would have been treated as a general unsecured claim to be paid, along with the other general unsecured creditors, at 5.25%. Moreover, OneWest may have voted to reject the Plan, as well as asserted other objections to confirmation.

(Valuation Order, 16.) Regarding the reason and good faith factors, the Debtor's states that he was unaware of the Lien during the Plan proceedings. So his delay appears to have been in good faith. But such inadvertence is not a strong enough reason to overcome the prejudice to CIT here, especially considering that the Debtor was represented by counsel and had access to all the information necessary to discover the status of the Lien. Finally, the delay was a lengthy three years. The Debtor hasn't shown that the Bankruptcy Court abused its discretion in finding the Debtor's delay was not excusable neglect.

### 3.3 Equitable Estoppel

In reviewing a bankruptcy court's application of equitable estoppel, the Court reviews findings of fact for clear error and conclusions of law de novo. *In re Howell*, 120 B.R. 137, 138 (B.A.P. 9th Cir. 1990). The Debtor argues that he relied on CIT's representation that it intended to release the Lien while the Zuma Property was in escrow. The Bankruptcy Court held that estoppel issues arising from the post-confirmation sale of the Zuma Property were not appropriate for disposition in connection with the Debtor's Motion to Value. (Valuation Order, 17.)

The Federal Rules of Bankruptcy Procedure provide that a party must bring an adversary proceeding to determine "the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). Once an adversary proceeding is brought, the bankruptcy court must then decide whether it has subject matter jurisdiction over a dispute regarding post-confirmation sale of estate property. *See Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124 (9th Cir. 2010). The Court agrees that the Debtor skipped these steps and

that the equitable estoppel issue was not properly before the Bankruptcy Court. The Bankruptcy Court thus didn't commit clear error in declining to rule on the merits of that issue.

### 3.4 Appropriate Scope of Valuation Order

Finally, the Debtor argues that the Bankruptcy Court erred by addressing lien avoidance on a Motion to Value. He argues that he was not given adequate notice or an opportunity to defend his position regarding avoidance. (Dkt. 12, 44-45.) Again, the Court finds that the Bankruptcy Court ruled appropriately. In bringing his Motion to Value, Debtor was specifically seeking to avoid CIT's Lien. *See* Valuation Order at 12 (chart regarding treatment of liens). The motion made explicit proposals regarding the treatment of each lien on the Zuma Property. (*Id.*) And, placing the motion in context, it was prompted by CIT's refusal to release the Lien and the parties' agreement to set aside the sale proceeds pending resolution of the Lien avoidance issue. (*Id.*) The Debtor did not suffer from insufficient notice regarding the effect of *res judicata* on lien avoidance. It was proper for the Bankruptcy Court to consider whether the avoidance dispute reflected in Debtor's own Motion to Value was barred by *res judicata*.

## 4. DISPOSITION

The Bankruptcy Court's Valuation Order is AFFIRMED.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | mku | |